**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MADISON MATTHEWS,<br><br>        Plaintiff,<br><br>        v.<br><br>GUCCI; GUCCI AMERICA INC; GUCCI NORTH AMERICAN HOLDINGS; KERING; GREGORY WRIGHT (in his individual and official capacity); JAMES TAYLOR (in his individual and official capacity); JESSICA BUQUICCHIO (in her individual and official capacity); AND JESSICA SANTI-WELLS (in her individual and official capacity),<br><br>        Defendants. | Case No. 21-cv-00434-KSM |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**GUCCI AMERICA, INC. AND KERING AMERICAS, INC.**
**MOTION TO COMPEL ARBITRATION AND FOR SANCTIONS**

DAVIS WRIGHT TREMAINE LLP
Lyle S. Zuckerman (*admitted pro hac vice*)
Geoffrey Brounell
Scott M. Cooper (*admitted pro hac vice*)
1251 Avenue of the Americas
21st Floor
New York, New York 10020
(212) 489-8230
*Attorneys for the Defendants Gucci America, Inc. and Kering Americas, Inc.*

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................................. 1

II. STATEMENT OF RELEVANT FACTS ........................................................................ 2

    A. The Parties and Claims ......................................................................................... 2

    B. Matthews Voluntarily Executes a Mutual Arbitration Agreement ........................ 2

    C. Matthews Initiates Arbitration .............................................................................. 3

    D. The Instant Action Filed in Violation of the MAA ............................................... 4

    E. Matthews' Counsel Fails to Satisfy the Court's Meet and Confer Direction ......... 6

III. ARGUMENT ..................................................................................................................... 7

    A. Under the FAA, this Court Should Dismiss the Case and Refer Matthews' Claims to Arbitration ............................................................................................. 7

        1. Matthews Entered Into a Valid Agreement to Arbitrate ............................ 9

        2. Matthews' Substantive Claims Fall Within the MAA ............................. 10

        3. Any Argument That Matthews Cannot or Should Not Be Required To Proceed in Arbitration Against the Individual Defendants is Without Merit ......................................................................................................... 11

IV. THE COURT SHOULD IMPOSE SANCTIONS FOR THE MERITLESS MULTIPLICATION OF PROCEEDINGS ................................................................... 12

V. CONCLUSION ................................................................................................................ 13

4836-1693-1044v.2 0103714-000026

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Antkowiak v. TaxMasters*,
    455 F. App'x 156 (3d Cir. 2011) ...................................................................................8

*Asberry-Jones v. Wells Fargo Bank, N.A.*,
    No. 19-83, 2019 WL 2077731 (E.D. Pa. May 10, 2019)..........................................10

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011)................................................................................................1, 8

*Blair v. Scott Specialty Gases*,
    283 F.3d 595 (3rd Cir. 2002) .......................................................................................9

*CardioNet, Inc. v. Cigna Health Corp.*,
    751 F.3d 165 (3rd Cir. 2014) .....................................................................................10

*Century Indem. Co. v. Certain Underwriters at Lloyd's London*,
    584 F.3d 513 (3d Cir. 2009).....................................................................................7, 8

*Danisco A/S v. Novo Nordisk A/S*,
    No. 01 Civ. 10557, 2003 WL 282391 (S.D.N.Y. Feb. 10, 2003)..........................12

*Dastra v. Kyriba Corp.*,
    No. 29cv4940 (KSM), 2020 WL 4584001 (E.D. Pa. Aug. 8, 2010) ......................10

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985)....................................................................................................8

*Ellin v. Empire Today, LLC*,
    No. 11-2312, 2011 WL 3792754 (E.D. Pa. Aug. 24, 2011) ....................................10

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991).......................................................................................................8

*Hawthorne v. Municipality of Norristown*,
    No. CV 15-01572, 2016 WL 1720501 (E.D. Pa. Apr. 29, 2016) ...........................12

*Hayes v. Reinhart Food Svc., LLC*,
    No. 16-2264, 2017 WL 783777 (E.D. Pa. Mar. 1, 2017) ....................................9, 11

*Hunt v. Moore Bros., Inc.*,
    861 F.3d 655 (7th Cir. 2017) .....................................................................................13

4836-1693-1044v.2 0103714-000026

*In re Prosser*,
  777 F.3d 154 (3d Cir. 2015)..................................................................................................12

*In re Prudential*,
  278 F.3d 175 (3rd Cir. 2002) ................................................................................................12

*Kaneff v. Del. Title Loans, Inc.*,
  587 F.3d 616 (3d Cir. 2009)....................................................................................................8

*KPMG LLP v. Cocchi*,
  565 U.S. 18 (2011)..................................................................................................................7

*Loftus v. Southeastern Penn. Trans. Auth.*,
  8 F. Supp.2d 458 (E.D. Pa. 1998) .........................................................................................12

*Medtronic AVE, Inc. v. Advanced Cardiovascular Systems, Inc.*,
  247 F.3d 44 (3rd Cir. 2001) ..................................................................................................10

*Medversant Technologies, LLC v. Leverage Health Solutions*,
  LLC, 114 F. Supp.3d 290 (E.D. Pa. 2015)............................................................................11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr Corp.*,
  460 U.S. 1 (1983)..................................................................................................................10

*Novik & Co., Inc. v. Jerry Mann, Inc.*,
  497 F. Supp. 447 (S.D.N.Y. 1980) .......................................................................................13

*Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  7 F.3d 1110 (3d Cir. 1993)....................................................................................................11

*Richards v. Am. Academic Health Sys., LLC*,
  No. 20-cv-00059 (KSM), 2020 WL 2615688 (E.D. Pa. May 22, 2020) ..........................7, 11

*Rivera v. Petsmart, Inc.*,
  No. 18-2121 (MMB), 2018 WL 5045380, at (E.D. Pa., Oct. 17, 2018) ..................................8

*Sands Bros. & Co., Ltd. v. Nasser*,
  No. 03-cv-8128 (BSJ), 2004 WL 26550 (S.D.N.Y. Jan. 5, 2004).........................................13

**Federal Statutes**

28 U.S.C. § 1927....................................................................................................1, 12, 13, 14

FAA § 2........................................................................................................................................8

**Rules**

Fed. R. Civ. P. 408......................................................................................................................4

I. **INTRODUCTION**

Defendants Gucci America, Inc. ("Gucci") and Kering Americas, Inc. (collectively, the "Corporate Defendants") hereby move to compel plaintiff Madison Matthews ("Matthews") to arbitrate her claims against all defendants pursuant to the Federal Arbitration Act, the "overarching purpose" of which is "to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011).  The Corporate Defendants also seek sanctions pursuant to 28 U.S.C. § 1927.

Matthews is indisputably bound by contract to arbitrate the federal and state law discrimination claims pleaded in the instant complaint:  (i) she received, executed, and chose *not* to opt-out of Gucci's Mutual Arbitration Agreement ("MAA"), which was entirely voluntary given that agreeing to its terms was not a condition of employment, and, (ii) she acknowledged the validity of the MAA by filing a claim for arbitration with the American Arbitration Association mirroring the statutory claims in the instant complaint, after which she failed to pay her portion of the filing fee ($300) and initiated the instant action in stark violation of her contractual commitment.  Matthews now refuses to proceed in arbitration – despite well-settled Third Circuit law favoring enforcement of arbitration agreements.  And, any argument that Matthews may concoct to resist arbitrating claims against Gregory Wright, James Taylor, Jessica Buquicchio and Jessica Santi-Wells (the "Individual Defendants") will fare no better.  Indeed, non-signatories to an arbitration agreement may compel arbitration where the issues the non-signatories are seeking to resolve in arbitration are intertwined with the agreement that the plaintiff has signed.  On this basis, the Corporate Defendants request that this Court compel arbitration of Matthews' claims against them and dismiss this litigation pending the outcome of the arbitration.

In addition, given that Matthews' counsel has intentionally multiplied these proceedings unreasonably and vexatiously, the Court should require Matthews' counsel to pay to the Corporate Defendants their costs, expenses, and attorneys' fees in connection with this application and Matthews' filing of a frivolous application for a temporary restraining order.

## II.     STATEMENT OF RELEVANT FACTS

### A.     The Parties and Claims

Matthews is a current employee of Gucci America, Inc. ("Gucci").  (Compl. ¶¶ 24, 137.) Individual Defendants Gregory Wright, James Taylor, Jessica Santi-Wells and Jessica Buquicchio ("Individual Defendants") are (or were) Matthews' colleagues and/or alleged supervisors.  (*Id*. ¶¶ 19-27.)  Although the Complaint alleges in a conclusory fashion that "Kering" is a joint employer of Plaintiff (together with Gucci and the Individual Defendants), it fails to set forth any facts in support of such conclusion.  (*Id*. ¶¶ 27.)

Matthews alleges that she is a transgender female and is perceived as disabled, and was discriminated against, harassed and/or retaliated against (for complaining about alleged discrimination/harassment) in violation of Title VII of the Civil Rights Act of 1964, the Pennsylvania Human Rights Act,[1] and the Americans with Disabilities Act; she also claims that defendants interfered with her statutory rights under the Family and Medical Leave Act of 1993. (*Id*. ¶¶ 12, 156-216.)

### B.     Matthews Voluntarily Executes a Mutual Arbitration Agreement

On March 25, 2019, Matthews executed (via an electronic document platform) a Mutual Arbitration Agreement ("MAA"), a true copy of which is attached to the Declaration of Lyle S. Zuckerman, Esq. ("Zuckerman Decl.") as Ex. A.  Employment with Gucci is <u>not</u> conditioned on

---

[1] Plaintiff filed this claim despite acknowledging that she has not exhausted administrative remedies.  (*Id*. ¶ 8.)

2

execution of the MAA. Indeed, the very first page informs employees that "[t]he decision whether to sign the MAA or opt out of it, pursuant to the opt-out process outlined in the MAA [at Section 10], is a voluntary decision to be made by you." It then recites that employees may "choose one of the following options: 1. Sign and return the MAA…; or 2. Opt-out of the MAA pursuant to the opt-out process…" Matthews affirmatively signed the MAA electronically, agreeing to be bound by its terms.

In relevant part, the MAA requires that both parties submit to final and binding arbitration:

> *all legal disputes and claims between them, including without limitation those relating to Employee's employment with the Company or any separation therefrom, and claims by Employee against the Company's parents, subsidiaries, affiliates, directors, employees, or agents, shall be determined exclusively by final and binding arbitration before a single, neutral arbitrator as described herein. Arbitration is the submission of disputes to an impartial individual, rather than a judge or jury, for final and binding determination. Except as provided below, Employee and the Company voluntarily waive all rights to trial in a court before a judge or jury on all legal claims between them.*

By executing the MAA, Matthews warranted and agreed that she read and understood the agreement, and consulted with her own attorney to the extent she deemed necessary. (MAA ¶11.) She was provided 30 days within which to review the MAA before her deadline to elect the opt-out procedure. (MAA p. 1, ¶¶ 5,10.) In addition, the MAA provides a list of eight company officials, together with their direct dial phone numbers, to contact if the employee has any questions about the MAA prior to signing it. (MAA p. 1.)

  C. **Matthews Initiates Arbitration**

In or about mid-September, Matthews' counsel threatened a lawsuit against Gucci. Gucci's counsel responded by advising Matthews' counsel that Matthews executed the MAA, and provided a copy of the MAA. Matthews' counsel replied, asserting that Matthews questioned the authenticity of the electronic signature. Gucci's counsel responded that internal

electronic records confirmed that Matthews electronically signed the MAA at the same time that she completed and/or acknowledged 11 other new-hire documents, including tax withholding and direct deposit paperwork.  (See Smith and Wapner email trail dated Sept. 21 – October 9, 2020, attached to Zuckerman Decl. as Ex. B.)

Apparently concluding that Matthews *had* signed the MAA, and lodging no other objection to the MAA or arbitration generally, on November 3, 2020, Matthews filed her demand for arbitration with the American Arbitration Association ("AAA") in Philadelphia, PA, a true copy of which (the "Demand") is attached to Zuckerman Decl. as Ex. C.  (The filing is styled as a "Complaint," likely because Matthews intended to file it in a court before she was reminded of her obligations under the MAA.)  The statutory claims asserted in the Demand are the very same statutory claims asserted in this action.  The AAA accepted the filing, and assigned it case number 01-20-0015-5590.  The AAA twice contacted Matthews' counsel seeking Matthews' share of the filing fee, and when Matthews' share was not submitted (and, to our knowledge, not responded to by Matthews' counsel), the AAA administratively closed its file without prejudice.  (See Dec. 15, 2020 letter from AAA, attached to the Zuckerman Decl. as Ex D.)

### D.  The Instant Action Filed in Violation of the MAA

On January 28, 2021, the parties engaged in discussions covered by Fed. R. Civ. P. 408. On January 29, 2021, in response to an email from Mathews' counsel threatening to file a federal court action against Gucci, the undersigned replied and reminded counsel that Matthews executed the MAA, which "contractually binds her to resolve any employment-related claims against Gucci (and its subsidiaries and affiliates, including Kering) *exclusively in arbitration*."[2] The Corporate Defendants reserved all of their rights and remedies in connection with any

---

[2] Matthews has also violated the MAA by requesting a jury trial.

4

breach of the MAA, including their rights to move to compel arbitration and to recover their costs and reasonable attorneys' fees.  (*See* Jan. 29, 2021 emails, attached to the Zuckerman Decl. as Ex. E.)

Notwithstanding this exchange, Matthews commenced this action on January 31, 2021, asserting the same statutory claims as those set forth in her AAA arbitration filing.  Matthews also sought a flabbergasting temporary restraining order ("TRO") seeking unprecedented affirmative relief.  (*See* Dkt. 4.)  The Court scheduled a conference to discuss the TRO application ("Court Conference").  The undersigned emailed the Court's Law Clerk, explaining that a copy of the TRO was not served or otherwise provided to defendants as represented by Matthews' counsel.  (See email trail among Law Clerk, Zuckerman, and Smith attached as Zuckerman Decl. Ex. F.)  The Court (through its Law Clerk) asked Matthews' counsel to "confirm that you emailed Mr. Zuckerman on January 29, 2021 upon the filing of your pleadings on ECF?"  (*Id.*)  The email also asked the parties to confirm receipt of the email.  (*Id.*) Matthews' counsel replied to the email containing two questions by stating simply "Confirmed," giving the false impression that she had served the undersigned with the TRO on January 29. (*Id.*)

At the Court Conference, the Court asked Matthews' counsel whether she provided the TRO to the undersigned on January 29 and, after an uncomfortable period of time during which Matthews' counsel purported to search her emails, she ultimately conceded that she had not. (Zuckerman Decl. ¶9.)  The Court then addressed the TRO application, and specifically the portion which would require that Gucci discharge defendant Wright's employment forthwith based on alleged <u>recent</u> retaliatory acts by Wright against Matthews.  In response to the Court's inquiry, however, Matthews' counsel was unable to identify any recent interaction between

5

Matthews and Wright – because Matthews had voluntarily applied for, and received many months prior, a transfer to a different Gucci business unit where Wright did not work. (*Id*.) As the Court's incredulity and skepticism reached a crescendo, Matthews' counsel indicated that she would voluntarily withdraw the ill-conceived TRO application. (*Id*.)

As for the enforceability of the MAA, the Court directed Matthews' counsel to "share whatever documents [she] has that will render defendants' forthcoming motion to compel moot." The Court encouraged the parties to meet-and-confer in good faith for this purpose. (*Id*.)

### E.  Matthews' Counsel Fails to Satisfy the Court's Meet and Confer Direction

Counsel for the parties held a telephonic meet-and-confer conference on March 9, during which Matthews' counsel made reference to "*a*" court decision – without providing a citation, the name of the case, or even the issuing court – which she claimed constituted precedent for invalidating the MAA on grounds that Matthews did not execute the MAA before she commenced employment with Gucci and/or was not presented the MAA along with other new-hire documents (both of which are factually incorrect).[3] (Zuckerman Decl. ¶ 10.) The undersigned requested a copy of that supposed decision, and Matthews' counsel agreed to supply it. Matthews' counsel did not provide any other reason why her client was not bound to arbitrate her claims. (*Id*.)

On March 12, the Corporate Defendants' counsel followed up by email reminding Matthews' counsel that she still had not provided a copy of the purported decision mentioned during the March 9 call. (*See* Scott Cooper March 12, 2021 email (redacted) attached to the

---

[3] The Complaint alleges that Matthews was hired April 2019 (Cmpl. ¶ 24), and Gucci records confirm that her hire date was April 1, six days after she signed the MAA. (Zuckerman Decl. ¶2). Matthews executed the following documents on March 25, 2019: the MAA, Form W-4, Code of Ethics Acknowledgement, Gucci America Confidentiality and Non-Solicitation (English Version), Emergency Contact Form, Grooming Standards Acknowledgement, EEO Information Survey Form, Employee Handbook Acknowledgement Form, 401(k) Automatic Enrollment Acknowledgement, Security Standards, Direct Deposit Form, and PCI Store Procedure. (*Id*.)

Zuckerman Decl. as Ex. G.)  There has been no response to that email providing the purported decision.  (Zuckerman Decl. ¶ 11).  The undersigned followed up with Matthews' counsel that same day and again on March 15, reminding her that the Court had instructed her to share information concerning the alleged invalidity/unenforceability of the MAA.  (See Zuckerman emails attached to the Zuckerman Decl. as Ex. H).  The undersigned spoke by phone to Matthews' counsel on March 15, but again she did not provide any case law (or other material) supporting her position as to the MAA.  (Zuckerman Decl. ¶ 12.)

On April 6, more than two months after the Court's instructions, the parties' counsel had another call, and Matthews' counsel *again* made vague reference to "a decision," and promised to send it to the undersigned that day.  (Zuckerman Decl. ¶13.)  Once again, Matthews' counsel did not mention any other documents, facts, or circumstances justifying Matthews' refusal to arbitrate her claims.  (*Id*.)

As of the date of this motion, we have not received any material from Matthews' counsel concerning the purported non-enforceability of the MAA.  (Zuckerman Decl. ¶14.)

### III.  ARGUMENT

#### A.  Under the FAA, this Court Should Dismiss the Case and Refer Matthews' Claims to Arbitration

The Federal Arbitration Act ("FAA") "'express[s] a strong federal policy in favor of resolving disputes through arbitration.'"  *Richards v. Am. Academic Health Sys., LLC*, No. 20-cv-00059 (KSM), 2020 WL 2615688, at *4 (E.D. Pa. May 22, 2020) (alteration in the original) (quoting *Century Indem. Co. v. Certain Underwriters at Lloyd's London,* 584 F.3d 513, 522 (3d Cir. 2009)); *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) ("The [Federal Arbitration] Act reflects an emphatic federal policy in favor of arbitral dispute resolution . . . require[ing] courts to enforce the bargain of the parties to arbitrate.") (internal quotes and citations omitted).

Section 2 of the FAA provides that arbitration agreements made as part of contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Congress passed the FAA to "reverse the longstanding judicial hostility to arbitration agreements[,] . . . to place arbitration agreements upon the same footing as other contracts," *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991), and "to ensure the enforcement of arbitration agreements according to their terms." *Concepcion*, 563 U.S. at 344. Courts therefore must "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985).

In deciding motions to compel arbitration, courts in the Third Circuit use "the same standard [applied] to a motion for summary judgment." *Kaneff v. Del. Title Loans, Inc.*, 587 F.3d 616, 620 (3d Cir. 2009). In determining whether there is any genuine issue of fact concerning the enforceability of the arbitration agreement, courts are mindful that they may invalidate arbitration agreements only on the grounds of "'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Antkowiak v. TaxMasters*, 455 F. App'x 156, 159 (3d Cir. 2011) (quoting *Concepcion*, 563 U.S. at 339). Specifically, courts enforce arbitration agreements where they "conclude that: (1) the parties entered into a valid agreement to arbitrate; and (2) the plaintiff's claims fall within the scope of the arbitration agreement." *Rivera v. Petsmart, Inc.*, No. 18-2121 (MMB), 2018 WL 5045380, at (E.D. Pa., Oct. 17, 2018) (citing *Century Indem. Co.*, 584 F.3d at 523). With respect to the former, the Court applies "ordinary state-law principles that govern the formation of contracts." *Id*.

The Court should grant the instant motion because, as discussed below, a valid agreement to arbitrate exists, and Matthews' claims fall within its scope.

8

### 1.  *Matthews Entered Into a Valid Agreement to Arbitrate*

Matthews signed the MAA, which she was <u>not</u> required to do to secure or continue employment with Gucci.[4]  It was entirely a voluntary choice.  Matthews was provided a meaningful opportunity to read, understand, and consider the terms of the MAA:  Matthews was provided 30 days within which to review the MAA (before being required to elect the opt-out procedure), was urged to seek her own legal counsel, and was offered eight company officials to contact with any questions.  (See pp 4-5, above).

Next, there can be no dispute that the MAA contains adequate consideration, because both parties have agreed to resolve disputes against one another solely in arbitration.  *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3rd Cir. 2002) (holding that mutual agreement to arbitrate claims constitutes sufficient consideration to enforce an arbitration agreement).

Finally, there are no facts to suggest that the MAA is unenforceable for any reason – including fraud, duress, or unconscionability.[5]  Matthews' counsel has failed even to raise any such defense to enforcement of the MAA, including during the February 3 Court conference and counsels' meet-and-confer discussions.  And, of course, Matthews effectively conceded that the MAA was enforceable when she initiated arbitration *after* her counsel was provided a copy of the MAA.  In an obvious, heavy-handed ploy to bring pressure to bear on Gucci by multiplying

---

[4] An arbitration agreement is enforceable even where the employee must choose between signing it or not accepting employment.  *Hayes v. Reinhart Food Svc., LLC*, No. 16-2264, 2017 WL 783777, at *2 (E.D. Pa. Mar. 1, 2017).

[5] We note that, pursuant to the MAA, Gucci is required to pay all costs unique to arbitration (other than the Employee's contribution toward the filing fee in an amount equal to court filing fees), and the arbitrator is expressly empowered to award reasonable fees and costs to the prevailing party to the same extent a court would be entitled to do so, in accordance with applicable law.  (MAA ¶ 8.)  The arbitrator also is required to apply the substantive law of the state in which the claims arose and/or federal law, as applicable.  (MAA ¶ 6.)  The arbitrator also is conferred the same authority to order remedies as would a court of competent jurisdiction.  (*Id*.)

the proceedings and imposing unnecessary legal fees, Matthews' counsel abandoned her own AAA filing and initiated this action with an ill-fated and frivolous application for temporary restraints.

### 2. *Matthews' Substantive Claims Fall Within the MAA*

To determine whether a claim falls within the scope of an arbitration agreement, a court's "focus [is] on 'the factual underpinnings of the claim rather than the legal theory alleged in the complaint.'" *Ellin v. Empire Today, LLC*, No. 11-2312, 2011 WL 3792754, at *6 (E.D. Pa. Aug. 24, 2011) (quoting *Medtronic AVE, Inc. v. Advanced Cardiovascular Systems, Inc.*, 247 F.3d 44, 55 (3rd Cir. 2001)). If those allegations touch matters covered by the arbitration agreement, the claims must be arbitrated, so as to "prevent[] a creative and artful pleader from drafting around an otherwise-applicable arbitration clause." *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165 (3rd Cir. 2014).

Here, Matthews is required to arbitrate "all legal disputes and claims between [her and Gucci], including without limitation those relating to [Matthews' employment with [Gucci]." (Zuckerman Decl. Ex. A). This is an exceedingly broad clause and, in any event, Matthews' claims are squarely related to her employment with Gucci. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. . . ." *Moses H. Cone Mem'l Hosp. v. Mercury Constr Corp.*, 460 U.S. 1, 24-25 (1983). Courts – including the Eastern District of Pennsylvania – have routinely ordered claims of discrimination, retaliation, and hostile work environment to arbitration pursuant to an enforceable arbitration agreement. *See e.g., Dastra v. Kyriba Corp.*, No. 29cv4940 (KSM), 2020 WL 4584001 (E.D. Pa. Aug. 8, 2010) (staying action and compelling arbitration of federal and state race, national origin, and age discrimination claims); *Asberry-Jones v. Wells Fargo Bank, N.A.*, No. 19-83, 2019 WL 2077731 (E.D. Pa. May 10, 2019) (staying action and compelling arbitration of race, color, and national origin

10

discrimination claims under federal and state law); *Hayes* 2017 WL 783777 (dismissing action and compelling arbitration of federal race discrimination claim).

### 3. *Any Argument That Matthews Cannot or Should Not Be Required To Proceed in Arbitration Against the Individual Defendants is Without Merit*

At the outset, Matthews cannot resist arbitration against the Individual Defendants because she expressly agreed to bring claims against them exclusively in arbitration. Indeed, the MAA provides that arbitration is the sole dispute resolution forum for any claims against Gucci and its "parents, subsidiaries, affiliates, directors, employees, or agents… ." (MAA ¶1.) Recognizing her obligation in this regard, Matthews' AAA filing names as respondents all of the Individual Defendants in this action. Accordingly, Matthews has waived whatever argument she may present concerning arbitration against individuals not a party to her MAA.

In any event, it is well-settled law that individuals who are not parties to an arbitration agreement are nonetheless entitled to the benefit of the arbitration agreement if the complaint alleges – as it does here – that "the interests of such parties are directly related to, if not congruent with, those of a signatory." *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1122 (3d Cir. 1993) (citation omitted); *Medversant Technologies, LLC v. Leverage Health Solutions*, LLC, 114 F. Supp.3d 290, 298 (E.D. Pa. 2015).

All of the Individual Defendants here are alleged supervisory agents of Gucci, and two of them are even alleged to be "joint employers" of Matthews (together with Gucci). (Cmpl. ¶¶ 20, 22, 24, 26, 27.) This conclusively establishes not only that the non-parties and parties have congruent interests, but that the "claims at issue . . . stem[] from the same incident and implicate[] identical legal principles," further justifying principles of estoppel. *Richards*, 2020 WL 2615688, at *4 (internal quotes omitted). Accordingly, Matthews is estopped from avoiding arbitration with non-signatories to the arbitration agreement. Any other outcome would be an

11

affront to the agreement to arbitrate – for if arbitration were denied with respect to the Individual Defendants, Gucci would inevitably be involved in the litigation between Matthews and the Individual Defendants.  *See Danisco A/S v. Novo Nordisk A/S*, No. 01 Civ. 10557, 2003 WL 282391, at *4 (S.D.N.Y. Feb. 10, 2003) (noting that plaintiffs "may not evade [their] obligation to arbitrate by naming [a non-signatory] as a party plaintiff in this action").

### IV. THE COURT SHOULD IMPOSE SANCTIONS FOR THE MERITLESS MULTIPLICATION OF PROCEEDINGS

28 U.S.C. § 1927 permits a court to impose liability on a party's counsel, in addition to the party itself, for "multipl[ying] the proceedings in any case unreasonably and vexatiously." 28 U.S.C. §1927.  Liability under Section 1927 is appropriate when the court "'find[s] an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct.'"  *In re Prosser,* 777 F.3d 154, 162 (3d Cir. 2015) (quoting *In re Prudential,* 278 F.3d 175, 188 (3rd Cir. 2002)).  "'Indications of . . . bad faith are findings that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment.'"  *Id.*  Attorneys who fail to dismiss actions which they know lack merit are subject to liability under Section 1927. *Hawthorne v. Municipality of Norristown,* No. CV 15-01572, 2016 WL 1720501, at *2 (E.D. Pa. Apr. 29, 2016) (awarding sanctions where counsel proceeded with discovery rather than dismissing action which counsel should have known lacked merit); *Loftus v. Southeastern Penn. Trans. Auth.*, 8 F. Supp.2d 458 (E.D. Pa. 1998)("When a claim is advocated despite the fact that it is patently frivolous or where a litigant continues to pursue a claim in the face of an irrebuttable defense, bad faith can be implied.").

Defendant respectfully submits that Plaintiff's counsel's course of conduct – which involved abandoning an AAA arbitration proceeding *that she initiated*, initiating this action, seeking a meritless application for a temporary restraining order, failing to serve a copy of same on the undersigned counsel (and misleading the Court about her omission), failing to abide by the Court's direction to provide the undersigned all materials relevant to any claim of MAA unenforceability during meet-and-confer conferences, and refusing to dismiss this action when counsel was unable to cite any factual or legal basis for failing to comply with the MAA – amply warrant an award of sanctions under Section 1927. *See Hunt v. Moore Bros., Inc.*, 861 F.3d 655, 660 (7th Cir. 2017) (imposing Section 1927 sanctions against plaintiff's counsel who resisted motion to compel arbitration because counsel's arguments to avoid arbitration were "doomed" and unsupported by any contention advanced to the court); *Sands Bros. & Co., Ltd. v. Nasser,* No. 03-cv-8128 (BSJ), 2004 WL 26550, at *3 (S.D.N.Y. Jan. 5, 2004) (noting that a court may impose sanctions where "the party refusing arbitration acted without justification or did not have a reasonable chance to prevail" (internal quotes omitted)); *see also Novik & Co., Inc. v. Jerry Mann, Inc.,* 497 F. Supp. 447, 450 (S.D.N.Y. 1980) (awarding attorneys' fees in part based on "unnecessary and unjustifiable persistence with which respondents have . . . opposed arbitration").

Accordingly, the Corporate Defendants respectfully request that the Court enter an order awarding to it the fees incurred in connection with this motion and the undersigned's work in preparing for and attending the Court's February 3 conference to discuss the TRO.

V. **CONCLUSION**

For the reasons discussed above, the Corporate Defendants respectfully request that the Court enter an order (1) directing Matthews to submit to binding arbitration the claims she asserts in the Complaint, (2) dismissing her claims or, in the alternative, staying them pending

13

such arbitration, and (3) awarding to the Corporate Defendants fees and costs in accordance with

28 U.S.C. § 1927.

Dated: New York, New York
April 12, 2021

        **DAVIS WRIGHT TREMAINE LLP**

        By: /s/Lyle S. Zuckerman
        Lyle S. Zuckerman (*admitted pro hac vice*)
        Geoffrey Brounell
        Scott M. Cooper (*admitted pro hac vice*)
        1251 Avenue of the Americas, 21st Floor
        New York, NY 10020
        (212) 603-6452
        *Attorneys for the Defendants Gucci America, Inc.*
        *and Kering Americas, Inc.*